NOTE IN IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **AdvantaClean Systems, LLC**, a North Carolina limited liability company<br><br>Plaintiff,<br><br>v.<br><br>**Jim Dundon Inspection Services, LLC** a Florida limited liability company;<br><br>**James A. Dundon**, a Florida citizen,<br><br>Defendants. | Case No. 3:23-cv-828 |

## COMPLAINT

Plaintiff AdvantaClean Systems, LLC ("ACS") for its Complaint against Defendants Jim Dundon Inspection Services, LLC ("JDIS" or "Franchisee"), and James A. Dundon ("Dundon" and collectively, the "Defendants"), alleges as follows:

**A.   Introduction**

1.     This is an action seeking preliminary and permanent injunctive relief to enforce the terms of a Franchise Agreement between ACS and Franchisee, and to enjoin Defendants' trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, *et seq*. Defendant Dundon personally guaranteed JDIS's obligations under the Franchise Agreement. The Franchise Agreement expired on September 1, 2023. Upon expiration, the Franchise Agreement and Guaranty and Assumption of Franchisee's Undertakings ("Personal Guaranty") require, among other things, that Defendants: (a) comply with the covenants against competition and solicitation found in the Franchise Agreement; (b) cease using ACS' trademarks; (c) immediately cease using all telephone numbers and listings in connection with the operation of the

franchised business and authorize the transfer of the telephone numbers and directory listings to ACS; (d) return all Proprietary Materials and Confidential Information to ACS, including customer lists and data, and permanently cease use of such information and materials; (e) immediately cease using any confidential methods, procedures, and techniques associated with ACS; and (f) immediately cease operating its Office and cease representing itself to the public or holding itself out as a present or former franchisee of the AdvantaClean system. Defendants have failed to perform these obligations.

2. Rather than comply with their obligations under the Franchise Agreement and Personal Guaranty, Defendants are operating a competing restoration and remediation business under the name "Jim Dundon Environmental Services" in Seminole County, Florida, and the surrounding area, using ACS' Confidential Information and trademarks. ACS, therefore, seeks: (a) an immediate and permanent injunction prohibiting Defendants and those acting in concert and participation with them from operating a competing light industrial remediation business in the Seminole County, Florida area, in violation of the non-compete and non-solicitation provisions of the Franchise Agreement; (b) an immediate and permanent injunction enjoining Defendants' trademark infringement; (c) monetary damages relating to Defendants' unlawful conduct; and (d) an award of attorney fees and costs.

**B.     The Parties**

3. ACS is a limited liability company organized under the laws of the state of North Carolina with its principal place of business located at 110 N. Freeport Parkway, Coppell, TX 75019. ACS' sole member is Home Franchise Concepts, LLC, a limited liability company organized under the laws of the state of Delaware. Home Franchise Concepts, LLC's sole member is Home Franchise Concepts Parent, LLC, a limited liability company organized under the laws of

the state of Delaware. Home Franchise Concepts Parent, LLC's sole member is TCP HFC, Inc., a Delaware corporation with a principal place of business in Irvine, California. ACS is a North Carolina LLC and has a legal existence in good standing in its state of incorporation with the capacity to sue.

4. Defendant JDIS is a limited liability company organized under the laws of the State of Florida. JDIS' principal place of business is located in Deland, Florida, and JDIS may be served with process through its registered agent Jonathan Gitman at 7577 S.E. Belle Maison Drive, Stuart, Florida 34997, or at its principal office at 115 Asterbrooke Drive, Deland, Florida 32724.

5. Upon information and belief, James Dundon is the sole member of JDIS. Upon information and belief, Dundon is a citizen of the State of Florida, and may be served with process at 115 Asterbrooke Drive, Deland, Florida 32724.

**C.     Jurisdiction and Venue**

6. This Court has subject matter jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, as well as 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. The action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00.

7. This Court has personal jurisdiction over Defendants by virtue of their express agreement to jurisdiction in the "state and federal courts located in North Carolina." Franchise Agreement § XXIV(J) (A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit A**). Additionally, this Court has personal jurisdiction over Defendants because they entered into contracts with ACS, a franchisor organized under the laws of the State of North Carolina.

8.  Venue in this Court is appropriate because Defendants expressly agreed "to the fullest extent permitted by law, [the] exclusive venue for bringing of an action concerning [the Franchise Agreement] shall be in the state or federal courts located in Mecklenburg County, North Carolina." *Id*.

**D.  The AdvantaClean System and ACS' Trademarks**

9.  ACS has developed a proprietary system—the AdvantaClean System—for the establishment of a series of standards, specifications, products, marketing, telematics, training, and operations for the successful deployment of restoration and remediation services. Through the execution of franchise agreements, ACS authorizes others to use the AdvantaClean System, including, but not limited to, proprietary information, knowledge and know-how, systems and procedures, personnel policies, customer lists, specifications for vehicles, supplies, equipment and inventory, marketing, accounting, and bookkeeping (collectively, "Confidential Information") to offer and provide restoration and remediation services in residential and commercial properties. AdvantaClean franchisees specialize in offering and selling restoration and remediation services that make residential and commercial buildings clean, safe, healthy, and energy efficient at various locations within a defined protected territory.

10.  AdvantaClean franchisees enjoy a license from ACS that allows them to use the AdvantaClean trade name and trademarks (the "Marks"), and to benefit from the goodwill associated with such Marks, including the federally registered AdvantaClean® mark, Registration No. 2,767,746, in connection with the operation of their AdvantaClean franchised businesses.

11.  As of December 31, 2022, 142 AdvantaClean franchised outlets exist and operate throughout the United States.

PPAB 10209927v1

12. Since their first use in 2003, the AdvantaClean Marks have been used continuously by ACS and its predecessors and affiliates.

13. The validity of the AdvantaClean Marks, their registration, and ACS's exclusive right to use them in commerce are deemed incontestable under 15 U.S.C. §§ 1065 and 1115(b), as those Marks have been in continuous use in commerce for more than five (5) years and the required affidavit has been filed with the United States Patent and Trademark Office.

14. ACS and its affiliates have expended a great amount of money, time, and effort in creating, maintaining, improving, advertising, and promoting the AdvantaClean Marks and System throughout the United States, including the state of Florida. By virtue of such efforts, the AdvantaClean Marks have become associated in the minds of consumers of commercial and residential restoration and remediation services, and in the mind of the general public, with ACS and ACS alone, and valuable goodwill has been built up in the AdvantaClean Marks.

**E.    The Franchise Agreement and Personal Guaranty Agreement**

15. On September 1, 2008, Franchisee agreed to operate, for a period of fifteen (15) years, an AdvantaClean franchise using the Marks and Confidential Information, within the Territory,[1] as that term is further defined in the Franchise Agreement. *See* Franchise Agreement §§ II(A) and III(A). Franchisee agreed to provide through its AdvantaClean franchised business "services and products related to the cleaning and maintenance of air ducts, dryer vents, and ventilation systems: mold remediation, microbial sampling, testing, and indoor air quality assessments; and the performance of 24 -hour emergency mitigation, cleaning, and restoration

---

[1] The Territory includes approximately 26 zip codes in Seminole County, Florida. Franchise Agreement § II(A) and Attach. A.

services… for residential properties damaged by water and other property damage events." Franchise Agreement § I.

16. Defendants'[2] AdvantaClean franchised business was located at 1523 Old Daytona Circle, Deland, Florida 32724, and used the telephone number (386) 748-8995, among other telephone numbers.

17. Pursuant to Section XIII(A) of the Franchise Agreement, Franchisee acknowledged that its right to use the Proprietary Marks is derived solely from the Franchise Agreement, and is limited to the conduct of the AdvantaClean franchised business pursuant to and in compliance with the Franchise Agreement. Franchise Agreement § XIII(A). Franchisee further agreed that any unauthorized use of the Marks by Franchisee is a breach of the Franchise Agreement and an infringement of the rights of ACS in and to the Marks. *Id*.

18. Pursuant to Section XIX of the Franchise Agreement, Franchisee acknowledged that it would "receive valuable training and confidential information, including, without limitation, Confidential Information, Trade Secrets, information regarding promotional, operational, sales, marketing methods and techniques" developed by ACS for use in its AdvantaClean franchised businesses. Franchise Agreement § XIX(A). Therefore, to "protect [ACS'] Confidential Information and Trade Secrets and support the free exchange of ideas and information among [ACS] and [ACS' other franchisees]," Franchisee agreed to the covenants not to compete and not to solicit in Section XIX of the Franchise Agreement. *Id*.

---

[2] Although JDIS is the only signatory to the Franchise Agreement, Dundon entered into a Personal Guaranty Agreement by which he agreed to be bound by all terms found in the Franchise Agreement.

19. Pursuant to Section XIX(B)(ii) of the Franchise Agreement, Franchisee agreed that for a period of two (2) years after the expiration of the Franchise Agreement, Franchisee would not, within the Restricted Territory:[3]

(x) directly or indirectly, engage in, or

(y) participate in the promotion, financing, ownership or management of, or otherwise provide services to, any firm, corporation, or business (whether as an employee, officer, director, agent, member, manager, owner, partner, shareholder, consultant or otherwise), the purpose or result of which, in whole or in part, is to assist such firm, corporation or business to engage in,

The management or operation of a business that offers or sells the same or similar services or products customarily offered under the type of franchise licensed under [the Franchise Agreement], in competition with [ACS].

Franchise Agreement § XIX(B)(ii)

20. Further pursuant to Section XIX(B)(ii) the Franchise Agreement, Franchisee agreed that it is the parties' intent that the provisions of Section XIX be judicially enforced to the fullest extent permissible under applicable law, and that in the event any covenants or portions thereof are held to be invalid, the remaining portions and provisions of the Franchise Agreement shall be liberally construed in order to carry out the intent of the parties as nearly as may be possible. Franchise Agreement § XIX(B)(ii).

21. Pursuant to Section XIX(C) of the Franchise Agreement, Franchisee agreed that for a period of two (2) years after the expiration of the Franchise Agreement, it would not, within the Restricted Territory, divert or attempt to divert any business or customer of ACS or any other

---

[3] "Restricted Territory" is defined in the Franchise Agreement as "an area with a radius of ten (10) miles from the Franchisee's Territory; [and] areas within a radius of ten (10) miles of each Office location operated by the Franchisor and its other franchisees existing on the date of the expiration or earlier termination of [the Franchise Agreement]." Franchise Agreement § XIX(B)(ii).

AdvantaClean franchisees, to a competitor, by direct or indirect inducement or otherwise. Franchise Agreement § XIX(C).

22. Pursuant to Section XIX(G) of the Franchise Agreement, Franchisee agreed that the time limitations in Section XIX "shall be reduced by any period of time during which Franchisee is not in compliance therewith." Franchise Agreement § XIX(G).

23. Pursuant to Section XIX(I) of the Franchise Agreement, Franchisee acknowledged that the covenants in the Franchise Agreement are necessary to protect ACS' procedures and know-how transmitted during the term of the Franchise Agreement, and that "a breach of [the] covenants provided under [the Franchise Agreement] will cause irreparable damage and the parties agree that the remedies will be inadequate." Franchise Agreement § XIX(I).

24. Pursuant to Section XVII of the Franchise Agreement, Franchisee agreed that, upon expiration of the Franchise Agreement, Franchisee would, among other things: (a) cease using ACS' Proprietary Marks; (b) cease using all telephone numbers and listings in connection with the operation of the franchised business and authorize the transfer of the telephone numbers and directory listings to ACS; (c) return all Proprietary Materials and Confidential Information to ACS, including customer lists and data, and permanently cease use of such information and materials; (d) immediately cease using any confidential methods, procedures, and techniques associated with ACS; and (e) immediately cease operating its Office and cease representing itself to the public or holding itself out as a present or former franchisee of the AdvantaClean system. Franchise Agreement § XVII.

25. Pursuant to Section XXIV(A) of the Franchise Agreement, Franchisee agreed that ACS is "entitled without bond to the entry of temporary or permanent injunctions and orders of specific performance enforcing any of the provisions of this Agreement." Franchise Agreement §

PPAB 10209927v1

XXIV(A). Further pursuant to Section XXIV(A) of the Franchise Agreement, Franchisee agreed that if ACS secures such an injunction, Franchisee would pay ACS' aggregate costs of obtaining the injunction, "including, without limitation, reasonable attorneys' fees, costs of investigation and proof of facts, court costs, and other litigation expenses and travel and living expenses, and any damages incurred by the Franchisor as a result of the breach of any provision of" the Franchise Agreement. *Id.*

26. Pursuant to Section XXIV(H) of the Franchise Agreement, Franchisee agreed that in the event of any legal proceedings between the parties, "the prevailing party shall be entitled to recover reasonable attorneys' fees and court costs from the other party." Franchise Agreement § XXIV(H).

27. In conjunction with the Franchise Agreement, Dundon executed the Personal Guaranty, pursuant to which he guaranteed that Franchisee would perform "each and every covenant, payment, agreement, and undertaking . . . contained and set forth in" the Franchise Agreement. Franchise Agreement, Attach. B.

**F. The Franchise Agreement Expires and Defendants Start a Competing Business Under the Name "Jim Dundon Environmental Services" and Infringe the AdvantaClean Marks**

28. On September 1, 2023, the Franchise Agreement expired.

29. Upon expiration of the Franchise Agreement, Defendants were required to comply with the post-expiration covenants not to compete and other post-expiration obligations set forth in the Franchise Agreement.

30. However, recently, ACS discovered that Defendants are operating a competing business holding itself out as "Jim Dundon Environmental Services" ("Dundon Environmental"). Upon investigation, ACS discovered that Dundon Environmental is a business that offers and sells

the same or similar services (mold inspection, mold removal, mold remediation, water damage restoration, and air duct cleaning) that Defendants offered and sold through their former AdvantaClean franchised business. Further, Dundon Environmental provides and sells those services to customers in the Seminole County, Florida area, which is located within the Restrictive Territory under the Franchise Agreement. Additionally, Dundon Environmental provides and sells those services from the same location using the same telephone number as their former AdvantaClean franchised business.

31. For example, upon investigating Dundon Environmental, ACS discovered that on September 5, 2023—four days after the Franchise Agreement expired—JDIS and Dundon filed an Application for Registration of Fictitious Name (the "Application") with the Florida Secretary of State for the name: Jim Dundon Environmental Services. The Application lists JDIS as the owner of the fictitious name, and the Application is signed by Dundon. A true and correct copy of the Application is attached hereto as **Exhibit B**.

32. Additionally, ACS discovered Dundon Environmental has a website: jimdundonenvironmental.com (the "Website").

33. The Website states that Dundon Environmental offers services for "Mold Inspection," "Mold Removal," "Mold Remediation," "Water Damage Restoration," "Air Duct Cleaning," and "Dryer Vent Cleaning Services." The Website states that Dundon Environmental provides these services in "Seminole" County, Florida, among other areas.

> **Welcome to Jim Dundon Environmental Services**
>
> Since 2003, we have provided the Central Florida area with exceptional mold fighting capabilities, including: Mold Inspection, Mold Removal and Mold Remediation. We also provide professional Water Damage Restoration, Air Duct Cleaning, and Dryer Vent Cleaning services. Appointments with our experts are available for residents and business owners in DeLand, Lake Helen, Orange City, Deltona, and many other areas in Volusia, Seminole, and Flagler Counties. To find out if we serve your area, please call 386-748-8995.

10
Case 3:23-cv-00828-MOC-SCR    Document 1    Filed 12/04/23    Page 10 of 18
PPAB 10209927v1



34. The Website also lists the phone number: (386) 748-8995, the same telephone number previously used by Defendants' former AdvantaClean franchised business and the AdvantaClean Marks.

35. ACS also discovered that Dundon Environmental has a Facebook page. According to the Facebook page, Dundon Environmental offers "Mold Inspection, Mold Removal, Mold Remediation and Water Damage Restoration Services," and lists the same telephone number previously used by Defendants' former AdvantaClean franchised business and associated with the AdvantaClean Marks.



11

PPAB 10209927v1

36. Additionally, multiple websites associated with Defendants' former AdvantaClean franchise continue to display the AdvantaClean Marks alongside the phone number and, in many instances, the address formerly used by Defendants' former AdvantaClean franchised business, and now used by Defendants' competing business, such as Facebook, Manta, Dun & Bradstreet, Delton Direct, and Super Pages. Additionally, Dundon continues to hold himself out to the public on his LinkedIn profile as a former AdvantaClean franchisee. True and correct copies of screen captures of the foregoing websites are attached hereto as **Exhibit C**.

**G.     ACS Sends Defendants a Cease and Desist Letter, But Defendants Still Refuse to Comply with Their Post-Expiration Covenants Not to Compete and other Post-Expiration Obligations**

37. On November 6, 2023, ACS sent Defendants a cease-and-desist letter (the "Cease and Desist Letter"), which demanded that Defendants immediately comply with their post-contractual obligations, including their obligation not to own, maintain, engage in, be employed, or have any interest in any business that offers or sells the same or similar services or products offered under the Franchise Agreement within the Restrictive Territory for two (2) years. A true and correct copy of the Cease and Desist Letter is attached hereto as **Exhibit D.**

38. Defendants have not ceased operating Dundon Environmental, their competing business, and continue to fail to comply with their post-expiration obligations in the Franchise Agreement.

<u>**COUNT I**</u>
**BREACH OF FRANCHISE AGREEMENT AND PERSONAL GUARANTY (FAILURE TO COMPLY WITH POST TERMINATION OBLIGATIONS)**

39. ACS realleges each of the previous allegations as if fully set forth herein.

40. The Franchise Agreement and Personal Guaranty are lawful and binding contracts.

41. Defendants have failed to comply with the post-termination obligations set forth in the Franchise Agreement, including by operating a competing business. This conduct constitutes material breaches of the Franchise Agreement and Personal Guaranty.

42. ACS has no adequate remedy at law to protect its substantial business and property rights at issue in this lawsuit. The damages from Defendants' failure to comply with the post-termination obligations in the Franchise Agreement are considerable and continuing and thus not capable of ascertainment at this time.

43. ACS is entitled to preliminary and permanent injunctive relief enforcing all post-termination obligations of the Franchise Agreement, preventing Defendants from using the ACS's Confidential Information and know-how, using ACS's Marks, and preventing Defendants from operating a competing business in violation of the post-termination non-compete provisions.

44. As a direct and proximate result of Defendants' actions, ACS has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages, for breaches of the post-termination obligations, in an amount to be proven at trial, plus costs, disbursements, interests, and attorneys' fees, which in any case exceeds $75,000.00.

## COUNT II
## TRADEMARK INFRINGEMENT

45. ACS realleges each of the previous allegations as if fully set forth herein.

46. ACS has registered certain of its Marks with the United States Patent and Trademark Office.

47. Since registering its Marks, ACS has extensively advertised its Marks in connection with its products and services.

48. Defendants do not have any rights to the use of any Mark of ACS.

PPAB 10209927v1

49. Defendants continue to unlawfully use and display the ACS Marks in association with the operation of their competing business, Dundon Environmental.

50. Defendants' unauthorized use and display of ACS' Marks constitutes willful and intentional infringement of the Marks in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

51. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

52. Defendants' use in commerce of the ACS Marks without the consent of ACS is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by or associated with ACS.

53. ACS has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined, but in any case, exceeds $75,000.00.

54. ACS has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

55. ACS is entitled to preliminary and permanent injunctive relief preventing Defendants from further infringement of the ACS Marks, plus costs, disbursements, interest and attorneys' fees.

## COUNT III
## UNFAIR COMPETITION

56. ACS realleges each of the previous allegations as if fully set forth herein.

57. Defendants have infringed ACS' rights by using and displaying its Marks without authority.

58. Due to Defendants' infringement and conduct, customers are likely to be confused and induced into patronizing Defendants' competing business in the belief that the goods and services are affiliated, connected, or associated with ACS businesses. Customers have been or are likely to be confused as to the sponsorship of the products and services sold by Defendants while they continue to hold themselves out in a manner similar to that of a franchisee of the AdvantaClean System.

59. Defendants' actions constitute unfair competition in violation of 15 U.S.C. § 1125(a) and common law.

60. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

61. ACS has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined but in any case, exceeds $75,000.00.

62. ACS has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

63. ACS is entitled to preliminary and permanent injunctive relief preventing Defendants' unfair competition, plus costs, disbursements, interest and attorneys' fees.

## COUNT IV
## ATTORNEYS' FEES

64. ACS realleges each of the previous allegations as if fully set forth herein.

65. Pursuant Sections XXIV(A) and XXIV(H) of the Franchise Agreement, and Paragraph 4 of the Personal Guaranty, Defendants agreed to pay ACS for any and all reasonable costs and expenses, including reasonable attorneys' fees, incurred by ACS in connection with an event of breach of the Franchise Agreement and/or the enforcement of ACS's rights under the Franchise Agreement.

66. ACS commenced this action to enforce its rights and the provisions of the Franchise Agreement. ACS is entitled to recover its reasonable attorneys' fees and costs in connection with this action, in an amount to be proven at trial, which in any case exceeds $75,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ACS respectfully requests the following relief:

A. An order declaring Defendants breached the Franchise Agreement and Personal Guaranty;

B. An order for preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately comply with the post-termination obligations set forth in the Franchise Agreement, including but not limited to the requirement that Defendants to cease using ACS' Marks and Confidential Information;

C. An order for preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately cease operating a competing business in violation of the Franchise Agreement;

D. An order for a preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately cease engaging in unfair competition with ACS;

E. An award against Defendants, jointly and severally, for the damages ACS has sustained and the profits Defendants have derived as a result of their violations of the Franchise Agreement and Personal Guaranty;

F. An award against Defendants, jointly and severally, for the damages ACS has sustained and the profits Defendants have derived as a result of their violations of the Lanham Act, pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117;

G. An award against Defendants for treble damages and prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

H. An award against Defendants, jointly and severally, for ACS' reasonable costs and expenses, including attorneys' fees, incurred in enforcing the provisions of the Franchise Agreement; and

I. Such other and further relief as the Court deems just and proper.

PPAB 10209927v1

Dated: December 4, 2023

PARKER POE ADAMS & BERNSTEIN LLP

By: /s/ Nicholas H. Lee
Nicholas H. Lee
N.C. Bar No. 47885
620 South Tryon Street
Charlotte, NC 28202
Telephone: (704) 335-9876
Facsimile: (704) 334-4706
NicholasLee@parkerpoe.com

Frank J. Sciremammano*
LATHROP GPM LLP
The Watergate
600 New Hampshire Avenue, N.W. – Suite 700
Washington, D.C. 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250
Frank.Sciremammano@lathropgpm.com

*application for admission pro hac vice forthcoming

*Attorneys for Plaintiff*